ORVILLE B. and MARTHA J. SILVEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Silvey v. Commissioner
Docket No. 5607-75.
United States Tax Court
T.C. Memo 1976-401; 1976 Tax Ct. Memo LEXIS 2; 35 T.C.M. (CCH) 1812; T.C.M. (RIA) 760401; December 30, 1976, Filed Orville B. and Martha J. Silvey, pro se. Thomas G. Schleier, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Chief Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code and *4 Rules 180 through 182 of the Tax Court Rules of Practice and Procedure. The parties have filed no exceptions of law or fact to Special Trial Judge Falk's report. The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: This case was originally set for trial at Chicago, Illinois. Petitioners moved that it be consolidated for trial with another case, involving a deficiency in respect of their tax for 1973 (Dkt. No. 7629-75S), in which they had elected to proceed under our small tax case procedures, see sec. 7463, Internal Revenue Code of 1954; [1]Rules 170-179, Tax Court Rules of Practice and Procedure, and had designated Springfield, Illinois, as the place for hearing, and urged that both matters be heard at Springfield. Petitioners' motion was granted and the case was heard at Springfield pursuant to the provisions of Rule 180, Tax Court Rules of Practice and Procedure. See sec. 7456(c). *5 Respondent determined deficiencies in petitioners' federal income taxes for 1971 and 1972 in the amounts of $776.26 and $773.13, respectively. At trial, petitioners expressly conceded respondent's adjustments relating to their medical expense deductions. At issue, then, are the allowable amounts of petitioners' deductions for charitable contributions for 1971 and for taxes, charitable contributions, and interest for 1972. Also at issue, in respect of both years, is petitioners' liability for self-employment taxes under section 1401. FINDINGS OF FACT Petitioners, husband and wife, resided in Palmyra, Illinois, at the time their petition in this case was filed. They filed their joint federal income tax returns for the taxable years 1971 and 1972 with the district director of internal revenue at Springfield, Illinois. Petitioner Orville B. Silvey is a minister. At trial, respondent conceded that petitioners are entitled to exclude $392.10 from their gross income for 1971 under section 107. [2] Petitioners had not claimed any such exclusion on their 1971 return. Respondent also allowed petitioners to exclude from gross income for 1972, under section 107, $1,103.46 of the *6 $1,110.00 which they erroneously claimed as a miscellaneous deduction for utilities and maintenance of the parsonage on their 1972 return. The allowance of the parsonage exclusion for utilities and maintenance and the correct amounts thereof apparently were subjects which caused some consternation and controversy prior to the trial, but by the time these matters came on for hearing, the parties were in agreement. Petitioners claimed itemized deductions on their 1971 and 1972 income tax returns. In respect of 1971, respondent disallowed $573 of the $780 claimed by petitioners as a deduction for charitable contributions. For 1972, respondent disallowed the entire balance of petitioners' claimed itemized deductions [3] on the grounds that the amounts they substantiated in respect thereof did not exceed the allowable standard deduction, [4] and computed the tax from the tax tables *7 prescribed pursuant to section 3. The only evidence offered as to petitioners' itemized deductions was their testimony regarding charitable contributions. Mr. Silvey served several congregations in southern and central Illinois and made cash contributions to each of them. He believes in *8 tithing and makes a conscious effort to keep his contributions in the neighborhood of 10% of his gross income, making his contributions when he is paid.Mrs. Silvey contributed about $30 each year, in the aggregate, to the missionary societies of the churches her husband served. Petitioner Orville B. Silvey is not, on religious grounds or otherwise, opposed to the federal old-age and survivors insurance program. Indeed, he elected coverage under section 1402(e) as it was in effect before its amendment in 1967. He merely denies that he is self employed and questions why the self-employment tax provisions of the Code should apply to him, an employee of the churches he serves. In preliminary matters before this Court and at trial, petitioners complained that legal counsel was not appointed to represent them. However, petitioners took no steps to establish, with any particularity, definiteness or certainty, the facts as to their poverty. Petitioners also complain that they have been harassed by the Internal Revenue Service in that their returns for every year beginning with 1969 have been audited. Counsel for respondent claimed to have no idea why the Silveys were audited so *9 frequently, but Mr. Silvey suspects that there is a connection to his activities in 1969 involving a welfare rights protest march in Washington. OPINION With regard to petitioners' allowable deductions, the issues are purely factual. Petitioners have the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Barnes v. Commissioner,408 F.2d 65, 68 (7th Cir.), cert. denied 396 U.S. 836 (1969); Rule 142(a), Tax Court Rules of Practice and Procedure. We fully believe Mrs. Silvey's testimony, and we believe Mr. Silvey's testimony as to his intent to tithe and as to his general method of making contributions. Further, we have no doubts as to the feelings of generosity reposing in his heart. Nevertheless, we find it difficult to believe that he found it possible within the limitations of his rather meager income fully to carry out his intentions in this regard, and he did not directly say that he did. We have in mind, also, that, in making approximations in matters of this sort, where the proof lacks specificity and substantiation, it is not inappropriate to bear heavily upon the taxpayer, "whose inexactitute is of his *10 own making." Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). On the whole, we find that in each of the years involved petitioners contributed a total of $375 to the various churches which Mr. Silvey served and their missionary societies.[5]Cohan,supra.
The answer to petitioners' question as to why Mr. Silvey is taxed as a self-employed person when, in fact, he is an employee of the churches he serves is one as to which "a page of history is worth a volume of logic," New York Trust Co. v. Eisner,256 U.S. 345, 349 (1921). "For so long as federal income taxes have had any potential impact on churches -- * * * [over 80 years, now] -- religious organizations have been *11 expressly exempt from the tax." Walz v. Tax Commission,397 U.S. 664, 676 (1970). It seems understandable, then, that -- in the exercise of its "benevolent neutrality toward churches," Walz,supra -- Congress chose not to place the onus of participation in the old-age and survivors insurance program upon the churches, but to permit ministers to be covered on an individual election basis, as self employed, whether, in fact, they were employees or actually self employed. See S. Rept. No. 1987, 83d Cong., 2d Sess. (1954), 1954-2 C.B. 695, 701; H. Rept. No. 2679, 83d Cong., 2d Sess. (1954), 1954-2 C.B. 712, 714. Perhaps petitioner would wish us to substitute his judgment on this subject for Congress' mandate, but we cannot. "Any criticism provoked by it must be made to the lawmakers, not to the courts." Selected American Shares, Inc. v. United States,196 F.2d 473, 476 (7th Cir. 1952). Petitioner does not appear to have any quarrel with respondent's calculations of the self-employment taxes, and our review of them discloses no error. Petitioners have no right to counsel in this, a civil case. *12 [6]Ehrlich v. Van Epps,428 F.2d 363 (7th Cir. 1970); Peterson v. Nadler,452 F.2d 754, 757 (8th Cir. 1971). Although "a federal district judge is given discretion to appoint counsel in civil cases pursuant to the salutary provisions of 28 U.S.C. § 1915(d)," SEC v. Alan F. Hughes, Inc.,481 F.2d 401, 403 n.5 (2d Cir.), cert. denied 414 U.S. 1092 (1973); see Peterson v. Nadler,supra, this Court has no such power, see 28 U.S.C. sec. 451 (1970). Even if we did, this is not a case in which we can say we would have exercised it. See 28 U.S.C. sec. 1915(d); cf. Jordan v. Simon, an unreported case ( N.D. Ill. 1975, 36 AFTR 2d 75-6386, 75-2 USTC par. 9851). Finally, we must dispose of petitioners' contention that they have been harassed by the Internal Revenue Service, possibly for *13 political motives. We had occasion to discuss somewhat similar allegations in Greenberg's Express, Inc.,62 T.C. 324 (1974). As we said in our opinion in that case: [It] is conceivable that there may be situations where a taxpayer should be accorded some relief, if he were able to prove that he was selected for audit on a clearly unjustifiable criterion. [Cf. United States v. Falk,479 F.2d 616 (7th Cir. 1973).] But we think that such situations will be extremely rare and we are satisfied that petitioners' allegations, even if true, would not be sufficient. 62 T.C. at 328. Here, as in Greenberg's Express, there were legitimate reasons for the government to conduct an audit. Petitioners do not argue that the deficiency notices were without foundation, i.e., that they owe no tax. [7] Assuming without deciding that a standard similar to that developed in cases concerning alleged selectivity in criminal prosecutions should be applied to civil tax litigation -- a large assumption, indeed -- petitioners have not presented facts sufficient to raise a reasonable belief that the Service's decision to audit was based on impermissible *14 considerations. See United States v. Peskin,527 F.2d 71 (7th Cir. 1975), petition for cert. filed (April 20, 1976). In any event, we believe that petitioners' right to a trial de novo in this Court, and their exercise of it, have sufficiently assured petitioners that the final determination of their tax liabilities was based fairly upon the facts eatablished, and was not the result of any prejudicial action by a government agency. See Greenberg's Express,supra.
* * *
In accordance with the foregoing, and to reflect the concessions made by the parties, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. "The Code" refers to the Internal Revenue Code of 1954, as amended.↩
2. Because of this reduction in petitioners' gross income, their allowable medical expense deduction in excess of the 1% and 3% of adjusted gross income limitations, see sec. 213(a) and (b), will increase slightly for 1971. We expect the parties to take this into account in their Rule 155 computation.↩
3. In light of petitioners' concession as to the medical expense deduction and the parties' agreement relating to the allowance of an exclusion, rather than the deduction claimed by petitioners, for utilities and maintenance of the parsonage, and the amount thereof, of relevance here are the deductions which petitioners claimed for taxes ( $270), charitable contributions ( $701), and interest ($855.45), amounting to $1,826.45 in the aggregate. ↩
4. The standard deduction is the larger of the percentage standard deduction computed under section 141(b) or the low income allowance provided in section 141(cn8. Sec. 141(a). Here, the larger of those amounts is the low income allowance; $1,300 for 1972. Of course, petitioners are also allowed the two personal exemptions ($1,500) which they claimed. The tax tables take the exemptions as well as the appropriate standard deduction into account.↩
5. We are uninformed as to the extent to which respondent has not accepted petitioners' claimed deductions for taxes and interest in 1972. If less than $200, then the Rule 155 computation herein should be made on the basis of itemized deductions and not from the tax tables. If more than $200 of the amounts claimed as deductions for taxes and interest in 1972 were disapproved, then respondent's determination based upon the tax tables is sustained.↩
6. The Sixth Amendment provides, in relevant part: Inallcriminalprosecutions,↩ the accused shall enjoy the right * * * to have the assistance of counsel for his defense. [Emphasis supplied.]
7. At the trial, Mr. Silvey stated: Really, the only reason I'm here, I'd have to say, is that I wanted my day in court, where it wasn't all Internal Revenue Service.↩